UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| LEWIS SIMMONS, | ) |
| | ) |
|     Petitioner | ) |
| | ) |
| v. | ) 1:11-cv-00419-NT |
| | ) |
| STATE OF MAINE, | ) |
| | ) |
|     Respondent | ) |

**RECOMMENDED DECISION**

      Lewis Simmons was charged with thirty-two counts of Gross Sexual Assault. On July 24, 2008, a jury found him not guilty on the first thirty-one counts of the indictment and guilty on the final count. The thirty-two charges[1] all involved allegations that Simmons sexually abused the eight or nine year old daughter of his former domestic partner with whom he lived for a period of time in 2005 and 2006. The Court sentenced Simmons to a fifteen-year term of imprisonment with all but ten years suspended, to be followed by an eighteen-year period of probation with special conditions. Simmons filed a direct appeal, but did not file an application for leave to appeal his sentence pursuant to Rule 20 of the Maine Rules of Appellate Procedure and 15 M.R.S. § 2151. When his direct appeal was denied, Simmons proceeded with a post-conviction proceeding in the state court. Upon the Law Court's denial of his request to take a discretionary appeal from the post-conviction judgment denying him relief, Simmons filed this petition alleging as his sole ground that "a juror was crying during the trial [and] [s]he was not replaced at my request." (Petition at 5, ECF No. 1.) Subsequently, Simmons was given leave, without objection by the State, to amend his petition to allege every ground raised in support of

---

[1]     The evidence the jury heard included the mother's testimony. She had pled guilty and was awaiting sentencing in connection with these events. She described one incident in which Simmons engaged in oral sex with her daughter while she was present in the bedroom. Presumably her corroboration as to one incident explains the reason for the split verdict by the jury. (Trial Tr. at 77-84, Record § A.4.)

the certificate of probable cause to appeal the denial of post-conviction relief. (ECF No. 10.) Having reviewed Simmons's submissions and the underlying trial court record, I now recommend that the Court deny the petition.

### ISSUES ACTUALLY PRESERVED FOR FEDERAL REVIEW

The procedural posture of this section 2254 petition is somewhat unusual. Simmons's initial petition contained only the following substantive allegation: "A juror was crying during the trial. She was not replaced at my request." (Petition at 5.) After the State filed its answer and request for dismissal (ECF No. 6), pointing out that this issue had never been raised on direct appeal and was only preserved as an ineffective assistance of counsel claim during state post-conviction proceedings, Simmons moved to amend his complaint to allege all grounds properly preserved in state court. (ECF No. 8.) The State indicated it did not object to the petition being amended to include those grounds fully exhausted in the state court but did object to any attempt by petitioner to expand beyond those grounds. (ECF No. 9.) I granted Simmons leave to amend to allege the grounds he previously exhausted. (ECF No. 10.) In complete disregard of my order, Simmons filed a supplemental <u>unsigned</u> memorandum (ECF No. 11), which attempts to raise entirely new issues relating to a perceived conflict of interest by his trial counsel and to pretrial investigation and plea bargaining issues that were never raised in the state court. I have disregarded these new issues and considered only the merits of the arguments Simmons properly preserved in the state court for the following reason.

An important aspect of federal habeas review of state court decisions involves section 28 U.S.C. § 2254(b)(1)(A), which requires that a section 2254 petitioner exhaust "the remedies available in the courts of the State" prior to applying for federal habeas relief. The United States Supreme Court has explained the impact of the exhaustion requirement in the following way:

2

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.  To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted).

Because Simmons has not exhausted the issues in the state court, I have not considered the unsigned supplemental memorandum in this recommendation.  It does not appear that Simmons even raised any issue regarding his trial counsel's alleged conflict because of his prior prosecutorial position or the attempted plea bargaining in the state court.  The issue regarding lack of pretrial investigation was raised during state post-conviction proceedings, but it was not fully exhausted in the presentation to the Maine Law Court seeking leave to appeal from the post-conviction judgment.  Simmons cannot raise these issues for the first time in this Court without having given the state court the opportunity to consider the matters.

Simmons, with the assistance of court appointed post-conviction counsel who prepared the memorandum in support of the certificate of probable cause to the Law Court, did fully exhaust six claims of ineffective assistance of counsel in the state court.  Those claims include the following assertions of constitutionally deficient performance by defense counsel:  (1) failing to insist that juror 94 be removed because she cried during the trial;  (2) failing to attempt to obtain leave to file a sentence appeal;  (3) failing to adequately advocate on Simmons's behalf during the sentencing proceedings;  (4) failing to provide Simmons with adequate preparation for his trial testimony;  (5) entering into a stipulation that petitioner was not the spouse of the victim, an essential element of gross sexual assault;  and (6) failing to object to inadmissible evidence regarding the victim's "first report."  The post-conviction trial court considered eight additional

grounds that were raised below but never preserved in the petition seeking to appeal, except that three of the additional eight grounds fall within the generally preserved argument that trial counsel failed to adequately advocate on behalf of Simmons at the time of sentencing, and those arguments are discussed below.

**DISCUSSION OF THE SIX PRESERVED INEFFECTIVE ASSISTANCE ISSUES**

**A.     Standards**

To succeed on a claim of ineffective assistance of counsel in the context of 28 U.S.C. § 2254 review, Simmons "must show both deficient performance by counsel and resulting prejudice." Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).  The deficient performance aspect of the section 2254 burden requires Simmons to demonstrate that counsel's conduct in his case "fell below an objective standard of reasonableness."  Id. (quoting Strickland, 466 U.S. at 688).  This standard is highly tolerant of defense counsel's strategic choices.  "There is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,'" Id. (quoting Strickland, 466 U.S. 689), and Simmons bears the burden of defeating the presumption that the decisions of his attorney might be a "sound trial strategy" given professional norms.  Id.  What is more, for Simmons to satisfy the Strickland "prejudice" element, he must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. (quoting Porter v. McCollum, 130 S. Ct. 447, 453 (2009) (per curiam)).

In this case, because the Maine Supreme Judicial Court denied a certificate of probable cause for an appeal of the post-conviction court's judgment, the final judgment of the state court on the claims of ineffective assistance of counsel is the March 30, 2011, decision of the state

superior court justice.  (Am. Order and J., Simmons v. State of Maine, Docket No. BATSC-CR-10-73, Record § C.6.)  This section 2254 petition cannot be granted unless that state court decision was:  (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court's decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."  Williams v. Taylor, 529 U.S. 362, 405-406 (2000).  By comparison, the "unreasonable application" clause of section 2254(d) applies when "the state court identifies the correct governing legal principle from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case."  Id. at 407.  It also applies when the state court "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  Id.

"[A]n unreasonable application of federal law is different from an incorrect application of federal law."  Id. at 410.  The import of this distinction is that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.  See also Renico v. Lett, 130 S. Ct. 1855, 1862 (2010) (emphasizing that the state court decision "must be 'objectively unreasonable'") (quoting Williams, 529 U.S. at 409).

5

The Antiterrorism and Effective Death Penalty Act of 1996 also sets out a separate and demanding standard applicable to review of a state court's factual findings. Pike v. Guarino, 492 F.3d 61, 68-70 (1st Cir. 2007). The state court's factual findings are "presumed to be correct," unless the petitioner can rebut the presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B.   Analysis**

   **1.   Failure to challenge juror # 94**

Relying upon Wiggins v. Smith, 539 U.S. 510, (2003), and the Sixth Amendment to the United States Constitution, Simmons argued in the state court post-conviction proceedings that his counsel's failure to challenge juror # 94 amounted to ineffective assistance of counsel because there was "a reasonable probability that at least one juror would have struck a different balance." Id., at 537. Of course, the Wiggins case was not about challenging jurors, it was a case about counsel's failure to develop mitigating evidence at the sentencing phase of trial when one juror's failure to join in a unanimous vote for the imposition of the death penalty could have led to a different sentence. Nevertheless, the federal nature of the claim is crystal clear and enshrined in the Sixth Amendment right to "an impartial jury of the State and district wherein the crime shall have been committed." (U.S. Const. amend. VI.) Perhaps the better controlling Supreme Court precedent on the issue of the challenge to juror 94 would be Wainwright v. Witt, 469 U.S. 412, 424-434 (1985), which acknowledged that the trial judge must make a determination whether the juror would be able to faithfully and impartially apply the law, a judgment which must be based in part on the demeanor and responses the witness gives during questioning.

What happened in the current case is as follows.  After the testimony had been completed, but before final arguments and charge, trial counsel asked the trial judge to make inquiry of juror 94 who had shown emotion during the opening statements.   After defense counsel brought this matter to the trial judge's attention, the judge conducted a chambers interview of the juror with both counsel present.  (Trial Tr. at 350-354, Record § A.4.)  The judge told the juror that he had observed her emotional reaction during opening statements and wanted to know if there was any reason, anything in her background, that would interfere with her being an impartial juror.  She assured the judge that she could be fair and impartial, but noted that during the opening statements the descriptions given by the attorneys were "horrific" in that they described sexual acts being performed on a young child.  She indicated that she was stunned because of what was being described, whether or not it was true.  The juror thought that having a twelve year old daughter herself might have triggered her response, although she was surprised that no one else had the same emotional reaction she had, "because, true or not true, what was described is horrific."  (Id. at 352.)  Without objection the juror was allowed to continue to serve.

The post-conviction hearing was conducted by the trial judge and he noted in his post-conviction order that he and both counsel were satisfied based on the juror's demeanor and responses that she could be fair and impartial.  (Am. Order at 10, Record § C.6.)  The judge noted trial counsel's professional judgment in both raising the issue and then agreeing to the juror's continued service.  He also noted that trial counsel's failure to consult with the defendant was within the range of what might be expected regarding attorney performance because he did not believe such consultation would have been productive.  There was nothing in the state court ruling that was an "unreasonable application of" or "contrary to" any United States Supreme Court precedent.

### 2. Failure to file a sentence appeal

The post-conviction court considered this ground under the Strickland standard. Contrary to Simmons's contention, appeal of sentence is not the complete equivalent of his first appeal as of right under Supreme Court precedent. Evitts v. Lucy, 469 U.S. 387, 391-400 (1985). It is true under Maine law and procedure, Simmons could appeal as of right for leave to have his sentence reviewed. However, under Rule 20 of the Maine Rules of Appellate Procedure, a Sentence Review Panel determines whether to allow the appeal to proceed to the full court. Simmons's post-conviction materials in the state court and in this court fail to identify any issue that might have been raised in a sentence review that would have resulted in a lesser sentence. The sentence imposed was well within the trial judge's discretion. And most significantly, trial counsel did protect Simmons's right to a direct appeal most vigorously and raised significant issues in the appeal.

The state post-conviction court observed that trial counsel admittedly elected not to seek review of the sentence given that it was a middle-range sentence in terms of both the overall length and the unsuspended component. There were no identified deficiencies or illegalities in the court's sentencing analysis and thus there is no suggestion that Simmons suffered any prejudice in the failure to put the matter before the sentence review panel. Appellate counsel's strategic choice not to pursue a sentence review appeal under the Maine scheme is, in my view, entitled to the "doubly" deferential standard that applies to a state prisoner's claims that a state post-conviction court has unreasonably applied the Strickland principles. See Harrington v. Richter, 131 S. Ct. 770, 785 (2011) ("The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard."). Failure to seek leave to take a

sentence appeal under the Maine procedure is no different than failing to raise an equally meritless issue in the direct appeal.  Although state post-conviction counsel argued that counsel's failure to pursue a sentence appeal was akin to failure to discuss with Simmons his right to a direct appeal as set forth in Roe v. Flores-Ortega, 528 U.S. 470, 483-484 (2000), (Mem. In Supp. of P.C. at 5, Record § D.2), the Maine Law Court's rejection of that analysis in its order denying a certificate of probable cause to take an appeal of the post-conviction decision is neither contrary to nor an unreasonable application of either Strickland or Flores-Ortega.

### 3. Failure to provide effective representation at sentencing

In his memorandum in support of a certificate of probable cause following the state post-conviction hearing Simmons raised three interrelated arguments about trial counsel's sentencing presentation.  Simmons claimed that one of his character witnesses, Mary Whitcomb, his sister, did not receive adequate preparation and therefore told the trial judge that an innocent man had spent 18 months in jail awaiting trial.  Simmons also said that counsel never approached his wife, Sonja Simmons, about speaking at the sentencing.  Finally Simmons says he never allocuted at his sentencing because of counsel's advice.  When asked at the post-conviction hearing what he would have said, Simmons responded, "I am a nice, caring guy.  I try to help people out."  (Post-Conv. Tr. at 38, Record § C.4.)

The post-conviction factual findings, on the other hand, are diametrically opposed to Simmons's presentation.  Beverly Pennell and Mary Whitcomb both spoke as character witnesses at the sentencing proceeding.  They testified to Simmons's illiteracy, learning disabilities, medical condition involving heart problems, and general character.  According to the post-conviction court, "[t]he fact and nature of the remarks offered by [Simmons's] sister and

9

friend on his behalf suggests at least some level of preparation on their part, in concert with [Simmons] and his trial counsel, who introduced each of them to the court." (Am. Order at 11.)

The post-conviction court noted that at the time of the sentencing, when given the opportunity to allocute, Simmons's silence was attributed to his emotional state. At the post-conviction proceeding, trial counsel testified that he advised Simmons to remain silent because Simmons wanted to maintain his innocence, a posture that would not have helped the situation. The post-conviction court found that trial counsel's "recommendation was prudent under the circumstances." (Id. at 12.) The post-conviction court also noted that it was not clear what either Simmons or his wife could have said about his positive attributes that had not already been said by the sister and friend. There is nothing about this conclusion that rises to the level of an unreasonable application of the Strickland standard.

4.  **Failure to prepare adequately for Simmons's trial testimony**

The post-conviction court made more than adequate factual findings on this issue. The judge accepted trial counsel's testimony that he quickly realized that Simmons was illiterate and would need extra assistance. He rejected the testimony of Simmons and his wife about the amount of time spent in trial preparation. He also had observed that at the actual trial Simmons readily understood and answered the questions put to him by trial counsel. He observed that Simmons was prepared enough to stand up to vigorous cross-examination by the prosecutor while maintaining his innocence and not making any damaging admissions. (Am. Order at 6-7.) The post-conviction court's finding that trial counsel never fell below the Strickland standard in terms of ineffective assistance of counsel was neither unreasonable nor erroneous.

### 5. Stipulation regarding the essential element

The trial transcript reflects that prior to the State calling its final witness in its case in chief, the parties advised the court that they were stipulating that Simmons and the victim had never been married. After confirming the stipulation with Simmons, the trial judge accepted it. (Trial Tr. at 183-184.) At the post-conviction phase counsel was faulted for entering into this stipulation. If the parties had not so stipulated, the prosecutor made it clear she intended to recall either the victim or her mother to testify to this undisputed fact.

The post-conviction court agreed that trial counsel had exercised sound professional judgment in entering into this stipulation. The State had not yet rested and the judge would have allowed the mother or victim to be recalled to establish this fact beyond any reasonable doubt. (Am. Order at 7.) The stipulation "gave away no advantage in reality," and "reflected appropriate professional judgment of the part of [trial counsel]." (Id. at 8.) There is nothing unreasonable under Strickland about this analysis.

### 6. Failure to object to first report testimony

Simmons claims his trial counsel was ineffective because of his failure to object to "first report" evidence that was introduced through Judith Lewis, a family friend of the victim's mother and the adoptive parent of the victim's sister. Lewis testified that on June 23, 2007, the victim told her she had been the victim of sexual abuse. This report came almost one year after the victim and her mother had ceased living with Simmons. Lewis, a mandated reporter of child abuse because of her employment, called her supervisor and ultimately reported the abuse to the sheriff's department. The State elicited no testimonial details about the nature of the report or the identity of the perpetrator and Simmons's attorney offered no objection. (Trial Tr. at 167-168.) In fact, the jury had a question about Judy Lewis's testimony while it was deliberating and

11

the State's attorney made it clear for the record that she had asked the witness for no details because it would have been hearsay and not permitted by rules. (Id. at 412-13.) Under Maine law a "first report" is limited testimony offered to establish when a complaint about sexual conduct was first made to any person and to forestall the assumption that in the absence of a complaint nothing had occurred. State v. Weisbrode, 653 A.2d 411, 414 (Me. 1995).

Trial counsel was also appellate counsel in this case and he did raise the issue of the admissibility of this testimony under the obvious error standard on appeal. Counsel correctly recognized that the testimony was not within any recognized hearsay exception and could not be offered for the truth of matter asserted regarding identity of the perpetrator, details of the event, or other circumstances of the crime. Those details were not elicited. The Maine Law Court concluded there was no obvious error (State v. Simmons, No. Mem-09-197, Docket No. Sag-08-657, Record § B.3), but even if the admission of the limited testimony had been preserved error, its introduction did not necessarily violate Simmons's Sixth Amendment right of confrontation in a case where the victim was herself produced for cross-examination, unlike the situation in White v. Illinois, 502 U.S. 346 (1992), and its progeny up to and including Crawford v. Washington, 541 U.S. 36 (2004). In a habeas petition such as this, this Court obviously is only concerned with violations of federal rights under 28 U.S.C.§ 2254(a) (providing that a "district court shall entertain an application for writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States"). Legal error, whether or not preserved, under the Maine Rules of Evidence does not necessarily rise to the level of a constitutional violation.

The state post-conviction court concluded that even if a timely objection had been made in this case and raised on appeal, the outcome would not have been any different. The Law Court's review of the testimony under the obvious error standard provides the death knell for any suggestion by Simmons to the contrary. The Court has shown its willingness to vacate a rape conviction when the improper admission of hearsay testimony in corroboration of the victim's testimony amounts to obvious error affecting substantial rights. State v. True, 438 A.2d 460 (Me. 1981). The Law Court reviewed the "first report" testimony under the same standard as set forth in True and found no reason to vacate this conviction. Thus, the post-conviction court's conclusion that the prejudice prong of the Strickland standard had not been satisfied is clearly not an unreasonable application of that standard and this court must defer to that conclusion.

## CONCLUSION

For the reasons stated above, I recommend that the Court deny Simmons relief under 28 U.S.C. § 2254, with prejudice, and dismiss the petition. I further recommend that a certificate of appealability should not issue in the event Simmons files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

June 8, 2012  /s/ Margaret J. Kravchuk
U.S. Magistrate Judge